UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DESTENY JAY BADGLEY,

                            Plaintiff,

           v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                          Defendant.
_____

|  |  |
|---|---|
| | **DECISION** |
| | **and** |
| | **ORDER** |
| | **17-CV-1084F** |
| | (**consent**) |

APPEARANCES:         LAW OFFICES OF KENNETH HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER and
                              AMY C. CHAMBERS, of Counsel
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, New York  14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                    and
                              PADMA GHATAGE,
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              26 Federal Plaza, Room 3904
                              New York, New York  10278
                                    and
                              RICHARD W. PRUETT, and
                              LAURA RIDGELL BOLTZ,
                              Special Assistant United States Attorneys, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              1961 Stout Street, Suite 4169
                              Denver, Colorado  80294

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 8). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 21, 2018 (Dkt. 15), and by Defendant on November 14, 2018 (Dkt. 17).

## BACKGROUND

Plaintiff Desteny Jay Badgley ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on February 10, 2014, for Supplemental Security Income under Title XVI of the Act ("SSI"), and on March 26, 2014, for Disability Insurance Benefits under Title II of the Act ("SSDI") (together, "disability benefits"). Plaintiff alleges she became disabled on February 6, 2013, AR[2] at 53, 55, based on mental problems and learning disabilities, depression, anxiety/panic attacks, mood swings, heart murmur, and pre-cancerous cells in her uterus. AR at 232. Plaintiff's applications were denied on June 26, 2014, AR at 120-27, and at Plaintiff's timely request, on June 27, 2016, a hearing ("the administrative hearing"), was held in Jamestown, New York, by video conferencing before administrative law judge Roxanne Fuller ("the ALJ"), located in Fayetteville, North Carolina. AR at 62-91. Appearing and testifying at the hearing were Plaintiff, with legal counsel Brandi Smith Esq., and

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on May 22, 2018 (Dkt. 7).

vocational expert Trisha Oaks ("the VE"). *Id.* On July 22, 2016, Plaintiff's attorney submitted additional treatment records for the ALJ's consideration. *Id.* at 39-41.

On July 27, 2016, the ALJ issued a decision denying Plaintiff's claim. AR at 17-38 ("the ALJ's decision"). On August 28, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-6. On October 26, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On September 21, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 15) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 15-1) ("Plaintiff's Memorandum"). On November 14, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 17) ("Defendant's Motion"), attaching The Commissioner's Brief in Support of Defendant's Motion for Judgment on the Pleadings Pursuant to Local Standing Order on Social Security Cases (Dkt. 17-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on December 5, 2018, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 18) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Desteny Jay Badgley ("Plaintiff" or "Badgley"), born July 19, 1990, was 22 years old as of February 6, 2013, her alleged disability onset date ("DOD").  AR at 273.  It is undisputed that Plaintiff is of low-average to average cognitive ability, with weaknesses in verbal comprehension and working memory, attended high school until 10th grade, and was in special education classes because of her learning disability.  AR at 271-72, 402, 572-95.  Plaintiff's work history includes brief stints as a cashier, fast food service worker, secretary, babysitter, and restaurant hostess, AR at 66-68, 188-202, 211-230, but Plaintiff has not worked since January 26, 2014, because of her mental health condition.  AR at 217.  Plaintiff is married and lives with her husband and three young children, AR at 68, and the family lived for a year and a half with Plaintiff's terminally ill father for whom Plaintiff provided care until he passed away.  AR at 84-85.

## **DISCUSSION**

### 1.     **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.    Disability Determination

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the

applicant has a severe impairment which significantly limits the physical or mental ability

to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§

404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its

equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations

("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a

presumption of inability to perform SGA and the claimant is deemed disabled regardless

of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A);

20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment

or its equivalent is not listed in Appendix 1, the Commissioner must then consider the

applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical

or mental work activities on a sustained basis, notwithstanding the limitations posed by

the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-

(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and

416.920(e).  If the applicant remains capable of performing PRW, disability benefits will

be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the

Commissioner, at the fifth step, must consider whether, given the applicant's age,

education, and past work experience, the applicant "retains a residual functional

capacity to perform alternative substantial gainful work which exists in the national

economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and

citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on

the applicant for the first four steps, with the Commissioner bearing the burden of proof

---

[5] The duration requirement mandates the impairment must last or be expected to last for at least a
continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through June 30, 2013, AR at 22, Plaintiff has not engaged in SGA since her alleged disability onset date of February 6, 2013, *id.*, that Plaintiff suffers from the severe impairments of obesity, migraines, bipolar disorder, depression, anxiety, and a learning disability, AR at 22-23, but that Plaintiff's other medically determinable impairment of a heart murmur does not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 23, that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 23-25, and that Plaintiff retains the RFC to perform light work limited to occasionally climbing ladders, ropes, or scaffolds, occasional exposure to moving mechanical parts, occasionally operating a motor vehicle, occasional exposure to unprotected heights, performing simple, routine, repetitive tasks, working in a low stress job defined as requiring only occasional decision making with only occasional changes in the work setting, no interaction with the public, and occasional interaction with coworkers and supervisors. *Id.* at 25-33.  The ALJ further found Plaintiff unable to perform any past relevant work, *id.* at 33, yet given Plaintiff's age, limited education, ability to communicate in English, lack of transferable skills from her past work experience and RFC, jobs exist in significant number in the national economy that Plaintiff can perform including small parts assembler, electronics assembly worker, and laundry folder, all jobs which the ALJ

considered unskilled, such that Plaintiff is not disabled as defined under the Act.  *Id.* at
33-34.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of
the five-step analysis, but argues the ALJ erred at step 4 in evaluating medical opinions
and in failing to further develop the record such that the ALJ's assessment of Plaintiff's
RFC is unsupported by substantial evidence.  Plaintiff's Memorandum at 17-30.
Defendant maintains Plaintiff essentially challenges the ALJ's failure to weigh the
medical evidence in favor of finding Plaintiff disabled, Defendant's Response at 3, but
that substantial evidence supports the ALJ's determination that Plaintiff, despite several
severe impairments, retained the RFC to perform simple, low-stress work requiring
limited social contact, *id.* at 16-18, and reasonably assessed the medical opinions in the
record.  *Id.* at 19-23.  In reply, Plaintiff reiterates that the ALJ's failure to account for
gaps in the record and failure to consider certain of Plaintiff's limitations resulted in an
RFC that is unsupported by the substantial evidence in the record.  Plaintiff's Reply at 1-
10.

The so-called residual functional capacity or "'RFC' is an assessment of an
individual's ability to do sustained work-related physical and mental activities in a work
setting on a regular and continuing basis.  A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent work schedule."  SSR[6] 96-8p; 1996 WL
374184, at *1.  In making an RFC assessment, the ALJ must consider objective medical
facts, diagnoses, and medical opinions based on those facts, along with the claimant's

---

[6] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the
authority of the Commissioner of Social Security and are binding on all components of the Administration.
Such rulings represent precedent final opinions and orders and statements of policy and interpretations
that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

subjective symptoms of pain and other asserted limitations. 20 C.F.R. §§ 404.1545, 416.945. The "RFC is not the *least* an individual can do despite his or her limitations, but the *most*." SSR 96-8p; 1996 WL 374184, at * 1 (italics in original). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* If there is "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.* "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute her own judgment for competent medical opinion. *Walker v. Astrue*, 2010 WL 2629832, at * 6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527*e)(2), and 416.927(e)(2)), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). The Second Circuit has upheld an RFC assessment where the ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where there was sufficient evidence in the record to permit the ALJ to assess the RFC, including years of treatment notes and evidence of the claimant's social and recreational activities. *See Monroe v. Comm'r of*

*Soc. Sec.*, 676 Fed.Appx. 5, 6-9 (2d Cir. Jan. 18, 2017).  Further, "'where the medical

evidence shows relatively little physical impairment, an ALJ permissibly can render a

common sense judgment about functional capacity even without a physician's

assessment. . . .'"  *Walker*, 2010 WL 2629832, at * 6 (quoting *Manso-Pizarro v.

Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996)).  Moreover,

where substantial evidence in the record supports the ALJ's RFC assessment, there is

no "gap" in the medical record requiring the ALJ to further develop the record by

obtaining an additional medical source statement from one of Plaintiff's treating

physicians.  *See Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. Jan. 28, 2013) (citing

*Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious

gaps in the administrative record, and where the ALJ already possesses a 'complete

medical history,' the ALJ is under no obligation to seek additional information. . . .")).

In short, "[w]here the record primarily discusses a plaintiff's impairments,

symptoms, and treatment, but does not shed light on the plaintiff's limitations, the ALJ

may not rely on the record in determining the plaintiff's RFC."  *Johnson v. Comm'r of

Soc. Sec.*, 351 F.Supp.3d 286, 293 (W.D.N.Y. Dec. 27, 2018) (citing cases).  In

contrast, an ALJ is permitted to reject medical assessments by physicians and to rely,

instead, on the underlying treatment notes where such notes provide contemporaneous

medical assessments relevant to the claimant's ability to perform SGA.  *Monroe*, 676

Fed.Appx. at 6-9 (holding the ALJ, despite rejecting the treating physician's *post hoc*

medical opinion ostensibly based on observations reported in the treatment notes that

were inconsistent with the opinion, properly determined the claimant's RFC that was

based on the treating physician's contemporaneous treatment notes which constituted

more than a scintilla of evidence supporting the ALJ's RFC assessment). Here, a thorough review of Plaintiff's medical records establishes they contain sufficient contemporaneous medical assessments relevant to Plaintiff's ability to engage in SGA such that the ALJ was not required to obtain any further medical source statement on the impact of any impairment on Plaintiff's ability to perform SGA, and did not impermissibly substitute her own lay opinion for that of a medical assessment.

In particular, with regard to Plaintiff's heart murmur, Plaintiff argues the ALJ substituted her own lay opinion for the "vague opinion" of Aharon Wolf, M.D. ("Dr. Wolf"), who performed an internal medical examination of Plaintiff on June 20, 2014, in connection with a heart murmur with which Plaintiff was diagnosed at six weeks of age. AR at 397-400. Dr. Wolf found Plaintiff felt palpitations of a few minutes' duration, four or five times a week, but no chest pain or shortness of breath, *id.* at 397, her heart had regular rhythm, with no gallop or rub audible, *id.* at 398, and Dr. Wolf diagnosed a grade 2 systolic murmur, *id.*, resulting in "a moderate limitation for activities requiring exertion due to heart." *Id.* at 399. Plaintiff specifically argues the ALJ improperly equated Dr. Wolf's "moderate limitation" with an RFC for light work,[7] Plaintiff's Memorandum at 18-19, yet substantial evidence in the record supports this finding including that Plaintiff

---

[7]

       Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

took no medication for her heart murmur, nor was she followed on a regular basis for the condition. The only other medical treatment evidence in the record regarding Plaintiff's heart murmur is an examination by cardiologist George L. So, M.D. ("Dr. So"), on May 13, 2010, with Dr. So reporting that an echocardiogram from August 16, 2005 showed "the presence of a small membranous ventricular septal defect with associated aneurysm formation and left to right shunting as well as mild left atrial dilation," with left ventricular systolic function normal, a 12-lead electrocardiogram on April 9, 2010, showed normal sinus rhythm and normal tracing, and an echocardiogram on April 10, 2010 "showed normal findings except for presence of mild mitral and tricuspid regurgitations" with "[t]he previously noted membranous ventricular septal defect [ ] no longer present." AR at 296-97. Dr. So assessed that Plaintiff "does not have any significant heart disease except for mild mitral and tricuspid regurgitations." *Id.* at 297. Accordingly, this medical evidence "shows relatively little physical impairment," permitting the ALJ to "render a common sense judgment about functional capacity even without a physician's assessment. . . ." *Walker*, 2010 WL 2629832, at * 6. Moreover, the ALJ's limiting of Plaintiff to light work is consistent with Plaintiff's own description of her daily physical exertion that included cleaning and doing laundry, AR at 246, driving a car, *id.*, at 87, 246, shopping, *id.* at 247, playing with her children, *id.*, taking care or her disabled father and her children, which required her to make sure her father ate and took medication, *id.* at 244, changing her father's diapers, *id.* at 85, getting her children ready for school. AR at 244. Significantly, not only did the VE testify at the administrative hearing that Plaintiff's previous employment positions qualified as light work, but Plaintiff's stated reasons for leaving her previous jobs were because of her

mental health, and never because of a physical inability to handle the job demands. *See, e.g.*, AR at 67 (Plaintiff testifying at administrative hearing she quit her jobs because she did not like being around people); 263 (Plaintiff explaining in Work History Report completed in connection with disability benefits application her depression and anxiety interfere with her work history, but not mentioning any exertional limitation). Moreover, Plaintiff's description of her fast food service job included occasionally lifting 20 lbs., and frequently lifting 10 lbs., walking, standing and stooping for four hours a day, and kneeling for one, AR at 257, activity that is consistent with the physical exertional requirements of light work as defined in the relevant regulation, *i.e.*, 20 C.F.R. § 404.1567(b). Again, Plaintiff does not assert that the physically exertion requirements were a factor in causing Plaintiff to quit that job. Accordingly, on this record, the ALJ did not err in finding Plaintiff's heart murmur was not a severe impairment without obtaining a further medical source statement on the murmur's impact on Plaintiff's ability to perform SGA, nor in determining the murmur did not interfere with Plaintiff's ability to perform light work.

The ALJ also did not err in finding, without obtaining any further medical source statement, that Plaintiff's headaches posed no limitations beyond limiting Plaintiff to light work, and avoiding working in certain environmental conditions, including only occasionally climbing ladders, ropes, or scaffolds, operating a motor vehicle, working at unprotected heights, or occasional exposure to excessive noise, or moving mechanical parts. Rather, the medical evidence in the record establishes that commencing on October 21, 2014, Plaintiff sought treatment from neurologist Nicolas P. Saikali, M.D. ("Dr. Saikali"), at Dent Neurologic Institute ("Dent"), in Buffalo, New York, for migraine

headaches, AR at 437-39, returning for re-evaluation on December 9, 2014, AR at 440-42, but not again until May 5, 2016. AR at 597-99. At the October 21, 2014 examination, Plaintiff reported her headaches began more than a year before she ceased working, but recently were more severe, with two migraines a week associated with intolerance to light (photophobia) and sound (phonophobia). *Id.* at 437. Plaintiff's examination was relatively unremarkable with Plaintiff's cranial nerves normal, and Plaintiff well-groomed, pleasant, and in no acute distress, and exhibiting appropriate affect and eye contact, alert and oriented in all spheres, with good attention and concentration, intact recent and remote memory. *Id.* at 438. Dr. Saikali assessed migraine headaches without aura, myofascial pain, or occipital neuralgia, and no need for prophylactic medications, but prescribed Topamax and Imitrex, and recommended stretching exercises. *Id.* Upon re-evaluation on December 9, 2014, Plaintiff reported intolerance of Topamax and Imitrex, but that she took Ibuprofen twice a week. *Id.* at 440. An MRI of Plaintiff's brain taken after her earlier examination was normal, neurological examination was completely normal, but Dr. Saikali found Plaintiff with tenderness in her trapezius muscles for which massages and stretching therapy were recommended, and amitriptyline and Maxalt were prescribed. *Id.* at 440-41. When Plaintiff next returned to Dent on May 5, 2016, she reported her migraines had worsened since February 2016, occurred three or four times per week, yet Plaintiff's examination was again unremarkable. *Id.* at 598. Botox therapy and Avert were prescribed, with Plaintiff's headaches attributed to her overuse of Ibuprofen and Excedrin. *Id.* at 598-99. Significantly, following none of Plaintiff's evaluations at Dent were any work limitations assessed based on Plaintiff's headaches, nor would any be

expected in light of the scant medical evidence of physical impairment caused by Plaintiff's asserted headaches, such that the ALJ was permitted to use common sense in making a functional capacity assessment of the limitations to Plaintiff's ability to engage in SGA posed by her migraines, *Walker*, 2010 WL 2629832, at * 6, and did so in including additional restrictions to Plaintiff's RFC of avoiding working in certain environmental conditions, including only occasionally operating a motor vehicle, working at unprotected heights, or occasional exposure to excessive noise, or moving mechanical parts, and further limiting Plaintiff to low stress jobs with no interaction with the public and only limited interaction with supervisors and co-workers, which restrictions are consistent with Dr. Saikali's identifying Plaintiff's migraines triggers as intolerance to light and sound.  AR at 437.

In contrast to Plaintiff's argument, Plaintiff's Reply at 7, the ALJ did not improperly "cherry-pick" the evidence pertaining to Plaintiff's mental health in finding Plaintiff remained capable of light work, with the additional limitations of occasionally climbing ladders, ropes, or scaffolds, occasional exposure to moving mechanical parts, occasionally operating a motor vehicle, occasional exposure to unprotected heights, performance of simple, routine, repetitive tasks, work in a low stress job defined as requiring only occasional decision making with only occasional changes in the work setting, no interaction with the public, and occasional interaction with coworkers and supervisors.  *Id.* at 25.  Significantly, Plaintiff's argument on this point suggests the ALJ erred in granting more weight to assessments made by the various mental health treating sources rather than to Plaintiff's complaints regarding her stress and depression, most of which are subjective in nature.  For example, Plaintiff argues that

"Plaintiff reported that stress and changes in schedule affected her because it made her very depressed and she did not want to be around anyone aka social isolation; and this is supported by the record. (Tr. 62-91, 251). Yet, the RFC findings do not account for individualized stress findings." Plaintiff's Memorandum at 25. The portion of the Administrative Record Plaintiff references, however, include the entire administrative hearing transcript, AR at 62-91, and Plaintiff's written statements on the Function Report – Adult, Anxiety & Work History completed by Plaintiff in connection with her disability benefits application. AR at 251. The ALJ is not required to accept such self-serving statements in considering a disability claim. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (citations omitted)). Further, the record shows that in arriving at Plaintiff's RFC, the ALJ considered all limitations identified by Plaintiff's mental health treating sources.

In particular, the ALJ considered evidence of Plaintiff's learning disability records from Jamestown Central School District where Plaintiff was enrolled throughout her school years, showing Plaintiff with low average cognitive functioning. AR at 27 (citing AR at 205). Plaintiff's learning disability, for which the only evidence is Plaintiff's school records, was not given as a reason for Plaintiff leaving any of her previous jobs. Moreover, Plaintiff's care of her ill father included making sure he took the proper dosage of his medications at the right time, a task which common sense informs could

not be entrusted to someone with significantly reduced intelligence. Accordingly, given the limited medical evidence of Plaintiff's low cognitive function, the ALJ was permitted to use common sense in making a functional capacity assessment of the limitations to Plaintiff's ability to engage in SGA posed by her low average intelligence, including that Plaintiff's RFC of light work was further limited to performing simple, routine, repetitive tasks, and working in a low stress job defined as requiring only occasional decision making with only occasional changes in the work setting. *Walker*, 2010 WL 2629832, at * 6.

It is undisputed that Plaintiff has an extensive history of depression, anxiety, and panic attacks, for which Plaintiff has been treated by psychiatrist Ralph Walton, M.D. ("Dr. Walton"), at Family Health Medical Services ("Family Health"), in Jamestown, New York, from May 15, 2012 through April 10, 2014. AR at 334-94. Despite repeatedly assessing Plaintiff with depression, and anxiety, which conditions were attributed to Plaintiff's stress of coping with three children born to her before age 22, the unexpected death of her mother, caring for her terminally ill father until his recent death, and marital strife, Dr. Walton generally found Plaintiff with spontaneous and appropriate speech, normal thought process without dementia or overt, illogical thinking, no compulsion, intact associative thinking, no delusions, hallucinations, obsessions, preoccupations, or somatic (relating to the body) thoughts, alert and oriented in all three spheres, intact memory, grossly intact attention span, concentration, judgment, and insight, knowledge and vocabulary within normal limits, and Plaintiff was without suicidal or homicidal ideation, and was not considered dangerous. *See, e.g.*, AR at 340 (April 9, 2013), 369 (March 12, 2013), 348 (October 1, 2013), 356 (January 21, 2014). Dr. Walton

prescribed Plaintiff antidepressant medications, including Xanax, which Plaintiff reported "helps a great deal." *Id.* at 361. From February 27, 2014 through February 3, 2016, Plaintiff received mental health services from Chautauqua County Department of Mental Hygiene ("CCMH"), where she was followed by psychiatrist Robert Gibbon, M.D. ("Dr. Gibbon"), AR at 442-551, who consistently assessed Plaintiff with scores on the Global Assessment of Functioning ("GAF") Scale[8] of 75 (September 11, 2014), AR at 498, 77 (November 13, 2014), AR at 502, 73 (February 6, 2015), AR at 515, 80 (May 18, 2015), AR at 527, 77 (June 29, 2015), AR at 532, 85 (August 17, 2015), AR at 539, and 84 (November 12, 2015), AR at 548, indicating, at most, only mild limitations in psychosocial, social, and occupational functioning, with any symptoms transient and expectable reactions to psycho-social stressors. *Kohler*, 546 F.3d 262 n. 1 (considering GAF scores between 70 and 80). Such mild limitations indicated by Plaintiff's GAF scores are consistent with are other findings from Plaintiff's treatment at the CCMH where despite diagnoses of bipolar disorder type I, generalized anxiety, depression, and history of learning disability, Plaintiff was generally found alert, oriented, adequately friendly and cooperative, with stable and appropriate affect, and not demonstrating anxiety, irritability, fear, or paranoia. *See*, *e.g.*, AR 476 (May 2, 2014). Again, Plaintiff's mental health issues were attributed to psychosocial stressors including marital

---

[8] The GAF Scale was "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychiatric problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (alterations in original) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM"), 32 (4th ed. 2000). Although GAF scores are intended only to make treatment decisions, rather than disability determinations, and are considered relevant to the ALJ's RFC determination, *Gonzalez v. Colvin*, 2016 WL 4009532, at *5 (W.D.N.Y July 27, 2016), the GAF scale is "no longer in use," *Kaczowski v. Colvin*, 2016 WL 5922768, at * 12 n.5 (S.D.N.Y. Oct. 11, 2016) (citing DSM (5th ed. 2013), yet "the Commissioner may still consider GAF scores as one factor among others." *Pena Lebron v. Comm'r of Soc. Sec.*, 2019 WL 1429558, at * 3 n. 3 (S.D.N.Y. Mar. 29, 2019) (citation and quotation marks omitted).

difficulties, the death of her mother, caring for her terminally ill father who then passed, and caring for her three young children.  *Id.* at 477.  With both medications and regular counseling sessions, Plaintiff's symptoms improved so much that on February 18, 2016, Plaintiff was "[g]enerally functioning rather appropriately," and her mood and affect were "Good.  Stable and appropriate."  *Id.* at 566.

The treatment notes from Family Health and CCMH are also consistent with the findings of two consultative mental health examinations including by Kristina Luna, Psy. D. ("Dr. Luna"), on June 20, 2014, AR at 402-06, and a mental residual functional capacity ("MRFC") completed by State Agency Psychological Consultant J. Straussner, Ph.D. ("Dr. Straussner"), on June 26, 2014.  AR at 98-106.  Specifically, Dr. Luna's mental status evaluation of Plaintiff found her cooperative though immature, manner of relating and overall social skills were poor, poor eye contact, and lethargic appearance. AR at 403.  Speech intelligibility was fluent with clear voice and age appropriate expressive and receptive language, thought processes were coherent and goal directed without evidence of hallucinations, delusions, or paranoia, affect was depressed and apathetic, mood was dysthymic (persistently mildly depressed), clear sensorium, and Plaintiff was oriented in all three spheres.  AR at 403-04.  Mild impairment of Plaintiff's attention and concentration, and recent and remote memory skills was attributed to emotional distress, cognitive functioning was not assessed but appeared to be in average range with somewhat limited general fund of information, insight was fair and judgment good.  *Id.* at 404.  Plaintiff reported cleaning her home three times a week, doing laundry, showering three times a week, getting dressed three or four times a week, but concentration difficulties and fear of burning food prevented her from

cooking,[9] Plaintiff can drive but dislike of being around people prevented her from shopping independently, and providing child care stressed her.  *Id.* at 404-05.  Plaintiff relied on family and friends, spent her days at home with her children writing and reading, listening to the radio and sitting outside.  *Id.* at 405.  With the exception of self-direction, Plaintiff's adaptive functioning skills were good.  *Id.*  Plaintiff exhibited no limitations in her ability to follow and understand simple instructions and directions, independently perform simple tasks, maintain a regular schedule, and make appropriate decisions, was mildly limited in learning new tasks and appropriately dealing with stress, and moderately limited in maintaining attention and concentration, independently performing complex tasks, and adequately relating with others, and difficulty with these tasks was attributed to Plaintiff's distractibility.  *Id.* at 405.  In assessing Plaintiff's MRFC, Dr. Straussner found Plaintiff with similar limitations, AR at 102-04, which the ALJ properly incorporated into her RFC determination by assessing Plaintiff's RFC as light work with the further restrictions of performing only simple, routine, repetitive tasks, working in a low stress job defined as requiring only occasional decision making with only occasional changes in the work setting, no interaction with the public, and only occasional interaction with coworkers and supervisors.

As such, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record.

---

[9] Plaintiff's husband cooks.  AR at 245.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 15) is DENIED; Defendant's

Motion (Dkt. 17) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 16th, 2019
Buffalo, New York